We're with us here. Amen. First matter is United States v. Dussan. Good morning and may it please this Court. My name is Robert Epstein. I'm here today on behalf of the appellant, Mr. Jason Dussan. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Thank you, Your Honor. The first issue on this appeal concerns acceptance of responsibility. Did the district court commit legal error in denying Mr. Dussan an acceptance credit? The district court, in ruling on this matter, said that he The TSR said he was ineligible. Do you want to address that as to whether he is eligible for consideration for acceptance of responsibility because of the grouping here? He is eligible, Your Honor, and I don't think there's any dispute from the government on appeal, which is different than the position they took below, but on appeal they seem to concede that Mr. Dussan is, in fact, eligible for an acceptance credit. The probation officer, the district court said the probation officer got it exactly right. I think he was mistaken. The probation officer got it wrong. The probation officer relied on this Court's decision in the United States versus McDowell. McDowell was a special situation because in McDowell there was a guideline provision that said that if the defendant suborned perjury, he cannot get acceptance regardless of all other factors. There's no provision like that at issue here. If not, he was eligible, though. Didn't the district court have discretion in this matter? Absolutely, Your Honor. But what the district court didn't do was do the right analysis, which is this Court said in United States versus Cohen, which, Judge Sareka, you are on the panel on it, I understand. What this Court said in Cohen was that a district court has to consider the totality of the situation, and in that case the defendant went to trial on 25 out of the 28 counts of the indictment. But this Court, in remanding, said the district court could still give an acceptance credit. The government had appealed in that case. But what did the district court miss here? I mean, he committed a crime while he was out on, while he was awaiting sentencing for the first crime. He was continuing his criminal activity in a different area, of course. Well, that's true, Your Honor. But what the district court didn't consider in finding that he was ineligible, the district court didn't consider that Mr. Dusan provided immediate confessions to both of the offenses, that he entered extremely timely guilty pleas, filed no motions. Well, then it's a discretionary matter, isn't it? It is absolutely discretionary, and we do not dispute that on remand, the district court considers the totality of the situation and concludes that Mr. Dusan did not accept acceptance. That's within his discretion. But it would also be completely within his discretion to award acceptance here. And what this court held in Cohen and what it held in McDowell was that a district court is obligated to look at the totality of the situation in deciding whether or not acceptance is warranted. The district court simply didn't do that here. The district court believed that the probation officer was right in concluding that Mr. Dusan was, quote, unquote, ineligible for an acceptance credit. The other key factor here in determining. Could one make an argument that you have harmless error here? Let's assume it is error, that he is eligible, and you do have to look at the totality of the circumstances. Other than the fact that he accepted responsibility, when you look under the. . . I mean, he gets a huge benefit by virtue of grouping, correct? I mean, one is a 30, one is a, what, 13, is that correct? That's correct. So you don't add them together, you just look at the 30. Right, and that's because the drug offense is somewhat more severe. Correct. Than the counterfeiting offense. But having gone and committed a very significant drug crime afterwards, and you look at all the other circumstances, is there any way you think this court, the district court, would even consider in the balancing act granting acceptance of responsibility? Absolutely, Your Honor. Again, this is a defendant. The first factor under 3E1.1 is does the defendant truthfully admit his conduct? And then the last factor is how timely is his admission? Is it a defendant who immediately confessed to both offenses? Is it a defendant who entered extremely timely guilty pleas, saving the government the expense of going to trial in these cases? That's a very key consideration in determining acceptance. And then another key factor here is that it was undisputed that Mr. Goussaint accepted responsibility for the much more serious drug offense. To the extent that the committing an offense while on pretrial release is a factor, a negative factor in determining whether or not he accepted responsibility for the counterfeiting offense, it's not a negative factor with respect to the drug offense, and it was undisputed that with respect to the drug offense, he accepted responsibility. That is the offense that's driving the sentence here. That's the offense that has a 30 offense level as opposed to 30. With the offense level here and the criminal history, it's what, 97 to 121 months if you have a 30? And you're saying 30 should be 28, is that right? Yes, Your Honor. And 28 would get you what sentencing range? It would get us 70 to 87. So it can make a very significant difference in this case. And I think it should be the district court that, in the first instance, considers the totality of the situation. An analysis that the district court did not get to here is the district court followed the probation officer in finding that he was ineligible, which I think everybody agrees now was mistaken. Could you also address the third issue, which is the consideration of the 3553A factors? Yes, Your Honor. The district court here did not address the 3553A factors whatsoever in explaining his sentence. And even more fundamentally, he didn't acknowledge and respond to the arguments that the defense counsel had made regarding those factors. The defense counsel had asked for a below-guidelines sentence in part on the fact that Mr. Dusant had tried to cooperate, which I neglected to say is also an extremely important consideration in terms of acceptance of responsibility. He participated. He tried to cooperate with the government. He participated in monitored phone calls. He tried to set up a controlled delivery of the drugs to the next purchaser along the line. So that's an extremely important consideration in terms of the 3553A factors. And the district court never acknowledged it and never responded to it. I agree that after the court said that he wasn't sure that he was being told the whole truth, he then went right to sentencing. But when you look prior to that in the hearing, can't we glean from the many statements made by the sentencing judge here what his reasoning would be under 3553A? I don't think so, Your Honor. And I think what Your Honor is referring to is the fact that the district court, in responding to some of the family members, when the family members were asking for mercy and for the possibility of house arrest, the district court said this is too serious an offense for house arrest. And the government seizes onto that and says, well he did assess one of the factors under 3553A, the seriousness of the offense. But it's a very different context. It's one thing to say this is such a serious offense that he can't get house arrest. It's another thing to explain your sentence and explain why this is the minimally sufficient sentence, the sentence that's sufficient but not greater than necessary to achieve the purposes of sentencing. The district court did not do that. And I don't think it's fair, I don't think it's right to take his remarks with respect to the issue of house arrest and carry them over to the explanation of sentence that he didn't provide. Do you think there was a chance that the district court was going to give a house arrest sentence here? Oh, no, no. And the defense counsel was requesting a sentence. I'm sorry, but the defense counsel wasn't requesting a house arrest. She was requesting a sentence of 60 months. Yeah, but he went into great detail on the minimal involvement in the crime and it was pretty clear from his analysis that he did not regard Mr. Dusant as a minimal participant. He outlined several factors. I think you're cutting short the district court's analysis here a bit. This is an experienced district judge, both in the state trial courts and the federal trial courts. He understood what was going on. But to the extent that we can take some remarks by the district court and say that there was some explanation for the sentence, that doesn't relieve him of the responsibility of responding to defense counsel's arguments as to why there should be a below-guideline sentence. Whatever the district court may have said about his role doesn't relieve the district court of the obligation to respond to the argument about him cooperating, Mr. Dusant cooperating with the government in being deserving of a lesser sentence. But obviously he thought that the subsequent crime trumped that degree of cooperation. Well, we don't know that. All we know on the first issue is that he believed that Mr. Dusant to be ineligible. We'll see if the government can help on that issue. Yes, Your Honor. One of the other arguments that defense counsel made as to a lower sentence was that Mr. Dusant was addicted to cocaine. Now, where is that in the record? Defense counsel made that proffer to the district court. Was there anything in the record that supported that? Not beyond the proffer. But the district court obviously accepted the proffer because the district court, as a condition of his supervised release, ordered drug treatment and testing. But when he was interviewed in connection with the pre-sentence report, did he tell the probation officer that he had a drug problem? Not that I'm aware of, Your Honor, no. No, but he obviously told defense counsel, who made that known to the court, and the court accepted it in ordering drug treatment and testing for him. There's a possibility. One, he didn't tell the pre-sentence officer, or probation officer, excuse me. But it also may be an indication in the record here that he took the other tact, that he didn't have a cocaine problem. I'm sorry, that the probation officer? Yeah, that he, Dusant, did not have a cocaine problem. We simply don't know, Your Honor. And see, that's the problem where the district court doesn't go through the 3553 analysis, doesn't respond to defense counsel's arguments. The appellate court is left to speculate as to what the state of the record really is. That's one of the main reasons this court has insisted upon the district court explaining its sentence, going through the 3553 factors, and responding to the arguments of the defense attorney. Yeah, I'm just saying my point is that waiting to the sentencing hearing for counsel to make a statement without there being anything relating to cocaine use in the pre-sentence report or elsewhere doesn't seem to get you very far. Counsel did make that representation in the sentencing memorandum as well. There was daily cocaine use, and that was the precipitating cause of Mr. Dusant's involvement in the drug conspiracy. Okay. I see my time is just about up. Unless there are any further questions from the court, I'll hand them over. Thank you, Mr. Gerstin. Thank you. Ms. Newton. May it please the Court? My name is Katie Newton. I represent the Appellee in this matter of the United States of America. This Court is being asked today to review the very careful and thorough determinations that were made by a very experienced district court judge at the sentencing hearing, a district court judge who looked at a defendant who, after pleading guilty to counterfeiting charges, has ---- You agree on the acceptance of responsibility or that he is eligible for considerations there? Absolutely, Your Honor. And the government's position is that while the probation officer may have inartfully expressed the term of ineligibility, it's very clear that Judge Davis ---- The probation officer said specifically ineligible, and the judge said specifically that the PSR got it, quote, exactly right, close quote. That is correct, Your Honor. But the district court judge also said at the sentencing hearing, in a colloquy with defense counsel, that other judges have denied acceptance of responsibility for these reasons. Judge Davis also said very clearly, I think this is a fair treatment. This is an experienced district judge who knew what his obligations and discretion were. You may be right. And if I were to place a bet, he's not going to give acceptance of responsibility based on the totality of the circumstances, but don't you have to jump through that hoop procedurally? Your Honor, I believe that the record is clear enough that we do not need to remand this case for Judge Davis to essentially make the same determination again. Where did he go through the other circumstances that one would take into account in denying the acceptance of responsibility? Your Honor, what Judge Davis did look at, Judge Davis had a colloquy with defense counsel on this issue. And in this issue, defense counsel admitted that the court had the discretion. If this court is going to look at this as a legal error, that Judge Davis legally did not understand his obligation, this should be reviewed under a plain error standard. It was not clear in appellant's opening brief which standard we should be looking at. As the government believes that this is a factual question, and the judge exercised properly his discretion to deny acceptance of responsibility, that should be reviewed under a clearly erroneous standard. But in looking at the record, very clearly at page 110 of the appendix, the district court asked, many judges reject acceptance of responsibility when defendant commits crimes later. And defense counsel admitted that the district judge would be within his discretion to deny acceptance. Well, saying that historically other judges deny acceptance of responsibility when there is a later crime would seem to ignore that you must follow a totality of the circumstances analysis. That is, you have to balance the good and the bad. Where did the balancing take place here? Your Honor, believe it, it's inherent in the record in looking that Judge Davis did do the balancing by recognizing the crimes that he admitted earlier, that he had committed earlier, his cooperation guilty plea, and then his determination to commit later crimes after that point. All of this comes into the totality of the circumstances. Well, what you've got is, on this one, you've got a counterfeiting crime that the person admitted that he had done very quickly. You have a drug crime that the person admitted accepted responsibility very quickly and, in fact, cooperated. And so it was not something that was, you know, drug out of him. He fessed up. And normally one gets a two-level down. You go down two levels. And in order not to do that, you need to do some balancing. And the only thing I can find in the record is the court seemed to think that he was ineligible for that because he committed a second crime after he was out on bail for sentencing relating to the first crime. Your Honor, that is certainly one interpretation of what the district court said. The government's position is that is not what the district court meant in its statement that recognizing that other judges have rejected acceptance of responsibility and also recognizing that he believed not allowing acceptance in this case was a fair treatment. And looking at the totality, we also have to recognize that if we gave acceptance of responsibility after putting all this together, combining the offenses and doing the grouping, essentially Mr. Dusan receives a complete discount for his counterfeiting offenses, allowing simply the two-point. There's no doubt he got a benefit. That's what happens with grouping here. But when you look at the application, though, to 3E1.1A, it lists a host of factors, 1, 2, 3, 4, 5, it looks like 6 or 7. And I don't see any discussion of any of those. Your Honor, the factors that would be relevant in this case would be Mr. Dusan's truthfully admitting the conduct that he had committed. Another factor would be his voluntary withdrawal or termination of criminal activities. The judge certainly looked at both of those, and the judge, in his discretion, was certainly entitled to determine that he believed the lack of voluntary withdrawal from criminal activity outweighed his admitting what he had done. One of the other considerations is voluntary assistance to authorities, rehabilitative efforts, the timeliness of his conduct in manifesting acceptance of responsibility, which we said was quick, and also his cooperation with regard to others. Your Honor, with respect to the cooperation, there is nothing on the record that indicates Mr. Dusan ever provided any real cooperation in terms of the counterfeiting offenses. And, in fact, instead he went on to drug trafficking. In addition, what is on the record is that Mr. Dusan said he wanted to cooperate with respect to the drug trafficking but was unable to do anything. Mr. Dusan, after he was arrested, tried to run a red light, tried to escape, and after he was caught by authorities, he was detained. Mr. Dusan, therefore, was not able to determine what post-rehabilitative conduct Mr. Dusan would have undertaken, what withdrawal he would have taken from further criminal activity because he had no choice anymore. Did the district judge indicate that those factors were not present and, therefore, he didn't have to consider them? Your Honor, the district court did not specifically state those. It was not addressed by either counsel. The district court addressed what had been brought up by both counsel with respect to acceptance of responsibility. What's troubling about this case is that the probation officer said he's ineligible for probation because of his continuing criminal conduct. And how do we know from this record that the district court wasn't convinced by that, that he was ineligible? Your Honor, we have a very experienced district court judge who did acknowledge that. What's in the record that demonstrates to us that he was aware that he was eligible? The fact that the district court judge said that this was a fair treatment that he was given to the defendant, the fact that the district court judge, that other judges had denied this, shows that the judge was making a choice. He didn't say, I am forbidden from giving acceptance of responsibility. He didn't say the law does not allow me to give acceptance of responsibility. The other thing we do, we also have to look at, is that looking in the totality of the circumstances here, in any event, when you look at what happened later on, there is no question as to what the district court would do in this case, specifically giving the litany that he did and his colloquy with the defendant, certainly at the end of a sentencing hearing. Remember, the defendant did not ask, and defense counsel did not ask, when the judge was discussing acceptance, for a chance for the defendant to speak at that time. Defense counsel did not raise at that time that defense counsel believed that this was a legal error that the judge was making. Instead, defense counsel also viewed this as the judge exercising his discretion at that time. Clearly, in the colloquy that Judge Davis had with Mr. Dusan later, it was very obvious that the judge did not believe what Mr. Dusan was telling him. The judge did not believe with respect to the involvement with Beamer Rodriguez, who Mr. Dusan had described as the person who was going to sell the drugs, the person who was really more responsible. When Mr. Dusan admitted that he was the one who had brought Beamer Rodriguez into the counterfeiting scheme itself. Well, that goes on to the minor role adjustment. But I guess, I mean, in my case, I've probably beaten the acceptance responsibility to death. If there's no further questions, I'd like you to turn to the what the district court did in going through the 3553A factors. Your Honor, this was a district court judge who should be commended for the thorough care that he took in this colloquy with the defendant. Although the judge did not go through at the end the litany of what the factors are, in looking at the colloquy he had with the defendant, it is clear the care that he took. He discussed specifically with other witnesses, and in Mr. Dusan's presence, of course, the fact of how serious these offenses were, the high quality of the paper that he used. Well, let's just run through them. I mean, did he, Mr. Epstein's mentioned the cocaine use. Did he discuss that at all? Your Honor, he did not, and there is a very simple reason he did not. There is, as Your Honor recognized, there is no mention anywhere in the record, with the exception of defense counsel making a representation, that Mr. Dusan suffered from cocaine abuse. Mr. Dusan himself, in the colloquy, never mentioned cocaine abuse. In fact, he said he got involved with the cocaine and heroin trafficking because he didn't have enough money for his rent. There is, however, mentioned in the pre-sentence report that Mr. Dusan did have some drug issues. He told the probation officer that he had a problem with alcohol and that he had a problem with marijuana. As a result of those, the judge did order drug treatment for Mr. Dusan as part of his sentence. But the fact that defense counsel can stand and say with no basis in the record that Mr. Dusan suffered from cocaine abuse, certainly it's not an argument that the judge would need to make any more specific findings on. Of the 3553A factors, why don't you run down through where you think he addressed the relevant ones. First of all, I guess why don't you tell us which ones you think are relevant and where he addressed them in the record. Your Honor, certainly the judge addressed the seriousness of the offenses by Mr. Dusan, one with respect to the high quality of the counterfeiting that was done, second with respect to the seriousness of the drug trafficking that was done. The judge was very careful and discussed almost two kilograms of heroin that Mr. Dusan was involved with and more than one kilogram of cocaine that Mr. Dusan was involved with. The judge also discussed Mr. Dusan's view of what he had done, whether in looking at his remorse or his view or essentially the deterrence factors when he said that he did not believe that Mr. Dusan was still telling the truth, that he had trouble, that he thinks he got some version of telling the truth but it wasn't the entire truth. The judge also looked at the need for rehabilitation for Mr. Dusan looking at the fact that he did suffer from some drug abuse with respect to marijuana and alcohol and respect that he did then look at what should be done to help Mr. Dusan with respect to that. The judge also looked at what his past employment history had been, went through with Mr. Dusan what he had done, his positions as delivering pizza, his positions in working with Mr. Rodriguez. The judge looked at all of these factors in a very detailed quality. Did he talk about disparity of sentencing at all under A6? The judge did not specifically talk about disparity of sentencing, but, Your Honor, the judge gave a within-guideline sentence. As the Supreme Court has said in Rita, you can presume that this is a reasonable sentence. In fact, the judge specifically stated that even though he didn't believe he'd gotten the whole truth from Mr. Dusan, nonetheless he was going to impose a within-guideline sentence of 100 months, which certainly was at the lower end of the guidelines that Mr. Dusan was facing. The Supreme Court recognized in Rita that the district court, in making its determination of a within-guideline sentence, is also looking at or taking into consideration all the factors that the Sentencing Commission had already laid out. Therefore, the district court, in going through very carefully and in a very detailed manner with Mr. Dusan what he believed was important, it's clear, by imposing a guideline sentence, that he was taking into consideration the proper factors. How much discussion was there of the sentencing guideline range? Your Honor, there was, in the beginning of the colloquy, with defense counsel and with government counsel, the judge went through the guideline range. The judge also discussed that guideline range at the end of the colloquy with Mr. Dusan. So, specifically, the range was discussed, and there were no objections with the exception of the three levels that defense counsel had asked for, for acceptance of responsibility, and the additional levels that the defense counsel had asked for, for minor or for minimal participation. Other than that, both counsel agreed that the guideline range was properly calculated, and the court has specifically put that on the record. And some, Your Honor, this court has stated that there is nothing to be gained by a remand when the district court would only articulate again what it was already made clear. And in looking at the sentencing hearing as a whole, it is very clear that Judge Davis took time with the defendant, looked at the facts, spent a great deal of time with the defendant and with counsel. Dusan's counsel did mention it, the sentencing, did he not, that Dusan had attempted to assist authorities? Is that correct? Your Honor, there was a mention made that Mr. Dusan had attempted to assist authorities by trying to make some phone calls. Now, obviously it did rise to the level of a 5K1.1 departure or a motion by the government, but did the court address that at all? Your Honor, the court heard what defense counsel said. The court did not make any other specific comment with respect to the fact that Mr. Dusan had tried to make some phone calls. And as the court recognized, the government most certainly did not make a motion because Mr. Dusan had not provided substantial assistance to the government in this respect. But how are we to take this into account in terms of weighing reasonableness, realizing that there is a significant deference given to the sentencing judge when we don't know a whole lot of what went through the judge's mind? We're trying to, use my words with regard to Mr. Epstein, we're trying to glean from statements he made during the course of the sentencing hearing, but when the actual sentence was given, there was literally next to nothing other than I'm not sure I'm getting the whole truth. Your Honor, that is correct. With the very last statement that the judge made, that's what he said. But the court isn't required and shouldn't look just at that last statement. Simply by giving a litany at the end doesn't mean the judge took any more care, but I think the court does need to take a look at everything that the district court addressed and the district court said and the district court looked at throughout the course of a lengthy sentencing hearing. And when that is done, the government believes that it is clear that the judge was very careful in his determination as to a guideline sentence that is presumed by this court or can be presumed by this court to be a reasonable sentence, and there is nothing presented that takes his sentence outside of that presumption of reasonableness here. Could not one look at this sentencing transcript and make the blink response in reviewing it that what really happened here was the judge perceived that this person either wasn't being completely serious with him or wasn't giving him the whole truth and got a little upset, and as a result just went straight to the sentence, didn't pass through any of the hoops, and the question then becomes is that enough? But isn't that a possible reading of this transcript? The judge was getting a little irked at what he perceived to be a person up for a second crime, I should say, two crimes together, and he didn't think that this person was necessarily being straight with him. Your Honor, it certainly is a possible reading. The government does not believe that that is the most likely or the correct reading of the transcript, and we need again to go back and look at precisely what Judge Davis was asking Mr. Dusan throughout the colloquy that he did. And the judge was very, very careful. In fact, he even discussed with Mr. Dusan, for example, that when Mr. Dusan talked about Beamer Rodriguez, the judge had acknowledged he had previously just had Mr. Rodriguez in for a competency hearing, in which Mr. Rodriguez's IQ was found to be 61. And the judge asked Mr. Dusan, what's your impression of Mr. Rodriguez? Is he bright? And Mr. Dusan said, yeah, he's a regular person. It's not that he's not bright. That's part of the minor role adjustment, and I'm not quibbling with that. My concerns are acceptance responsibility and the procedure the court went through in announcing a sentence. Your Honor, there is no requirement that Judge Davis had given any specific emphasis or special emphasis to any of the factors that the judge looked at. This court should give deference to what Judge Davis saw in terms of the factors that he believed were most important in terms of the sentencing. And the government submits that the record is clear that the judge did not simply get irked with someone he did not believe was telling the truth. Instead, he took a great deal of care, both in listening to the witnesses that were presented on behalf of Mr. Dusan, in listening to Mr. Dusan's defense counsel, and in listening to Mr. Dusan himself. At the end of hearing all of that, the judge made the determination that, considering he did not believe he had gotten the whole truth, and as a whole after the sentencing hearing, still gave him a guideline sentence. The fact that he did still give him a lower end of the guideline sentence would seem to clearly indicate... If you take the acceptance responsibility as you have it, 97 to 121, but Mr. Epstein said under the other, if you include that, it would be 70 to 87. Is that correct? Your Honor, I believe if it was included at a level 28, it would actually be 78 to 97 months. Actually, that makes more sense to me. And, Your Honor, we also do have to consider that defense counsel, Mr. Dusan himself, had asked for these sentencing hearings to be consolidated. This was his decision to make. And in taking that decision, he then has to bear some responsibility for the fact that the court is going to look at the entire totality of the circumstances. He could have chosen to be sentenced on the counterfeiting case first. If he had done that, he then faces a higher criminal history category, and even if he might have been given, and that's a question of might have been given acceptance of responsibility, just looking at the drug offense, he's in an entirely different posture at that point. But here, this is a decision he made. The government believes the record is clear that the judge did look appropriately at all the factors that should be considered and gave an appropriate within-guideline sentence. If the court has any more questions, the government will respond to you. Thank you. Mr. Epstein. Thank you, Your Honor. By the way, isn't she right? It's really 79 to 97 as opposed to 70 to 87? I apologize, Your Honor. That was with three levels off for acceptance. And the pleas here are extremely timely, so you would expect if he is getting acceptance, he would get that third point. But it was my mistake. When I figured that out, it was with the third point. Mr. Dusan did ask for consolidation. I certainly didn't relieve the district court judge of the obligation to assess the totality of the situation in deciding acceptance or somehow waive an error by the district court in finding that he was ineligible for acceptance. Even as to the judge's remark at the conclusion of sentencing that he got a version of the truth, it's hard to understand what the judge meant by that exactly, because the judge did give the minor role adjustment, and he said absolutely Mr. Dusan was entitled to the minor role adjustment. And, of course, one of the requirements for minor role is that the defendant truthfully provide all information that he has about the case. And the judge's final remark in that regard about getting a version of the truth, he didn't point to anything in particular that he thought Mr. Dusan was being untruthful about. It may simply be that Mr. Dusan had limited information to provide about these cases. The practical problem you have looking at this case is that even if this were to go back and it were to be made clear that this person is eligible for acceptance of responsibility, I would lay a pretty serious bet that he's not going to get it, and we're going to stay with the same offense level and criminal history category 30 and 1, which is 97 to 121. And then the court is then going to go through and lay out ad nauseum the 3553A factors, and the sentence is still going to be at the low end of the range, 100 months. That may be, but truthfully, Your Honor, I'd like to take that shot with the district court. I would like to be in the position of being able to argue all that Mr. Dusan did here to deserve an acceptance credit. You know, it's the same situation this court had in Cohen, the inverse actually, where the district court gave an acceptance credit, heard the defendant speak, thought he was remorseful. The government took it up on appeal and argued, hey, the judge has to consider the totality of the situation and consider the fact that he went to trial on 25 out of the 28 counts. Now, there's no doubt the government made that argument to the district court in Cohen. There's no doubt the court heard that argument, and there's no doubt the court thought it was fair to give an acceptance credit. Nevertheless, while this court agreed with the government that the court had not on the record made the totality of assessment analysis that is required, this court sent it back recognizing that the district court could give that same acceptance credit again. Let me ask any further questions from my colleagues? Mr. Epstein, thank you very much. The case was very well argued. Thank you, Your Honor. We will take the matter under advisement.